IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |  |
|---|---|---|
| MICHELLELYNETTE HUGHES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:16-cv-674 |
| | ) | |
| INOVA HEALTH CARE SERVICES | ) | |
| d/b/a/ INOVA HEALTH SYSTEM, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant Inova Health Care Services d/b/a Inova Health System's ("Defendant" or "Inova") Motion for Summary Judgment. Plaintiff MichelleLynette Hughes ("Plaintiff") worked as a Pathologists' Assistant for Inova for almost two years. Plaintiff alleges that Inova discriminated and retaliated against her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and that she was subject to retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*

Defendant is a non-profit healthcare system based in Northern Virginia. Between February 2007 and December 2013, Plaintiff worked part-time, under a contract, as a Pathologists' Assistant at Inova Loudoun Hospital. In this position,

Plaintiff's duties included processing and grossing pathology specimens. As part of these duties, Plaintiff was responsible for dissecting and preparing specimens for processing, and she was to accurately dictate descriptions of gross anatomic features.

In December 2013, upon Inova's decision to take its pathology department in-house rather than contract pathology services, Plaintiff was offered full time employment as a Pathologists' Assistant by the Defendant. During her assessment for full-time employment, Plaintiff certified that she could stand for four to seven hours a day, given that Plaintiff's job description required continuous standing. Plaintiff also certified that she did not have a condition that could affect or limit her ability to perform the essential functions of her position. At the time that she was hired for full time employment, Plaintiff did not disclose that she suffered any disability or condition that required her to work from a seated position rather than standing.

Pathologists' Assistants, including Plaintiff, grossed specimens by using a work station referred to as a grossing station. In December 2013, Inova installed a new grossing station model that was an updated version of the previous model. The new grossing stations were designed by the manufacturer to lower to 33.5 inches off the ground. In January 2014, Plaintiff

2

informed Inova's Director of Laboratory Services, Tracey Jefferys, that she could not sit at her new grossing station with her feet resting flat at the floor because, at their lowest setting, Plaintiff believed the new stations were three inches higher than the older model she had been using. As a result, Plaintiff reported that she was experiencing painful back spasms. Plaintiff also reported that she had attempted to bridge the gap between her feet and the floor by using two metal stools, but that this was not a satisfactory solution.

In January 2014, Ms. Jefferys met with Plaintiff to address Plaintiff's complaint. Plaintiff was reminded that her job required continuous standing—meaning that Plaintiff was expected to stand at her work station 67-100% of the time. In response, Plaintiff advised Ms. Jeferys that she sat 90%, but she did not attribute her sitting to any pre-existing disability. Shortly after this meeting, Ms. Jefferys informed Plaintiff that her grossing station could not be modified to lower farther than it did, and she asked for Plaintiff's desired measurements for a custom-built foot rest. At the same time, Inova's Human Resources ("HR") asked that Plaintiff consult with a physician to determine whether she could meet her position's requirements, with or without an accommodation.

A month later, in mid-February 2014, Plaintiff provided HR with a letter from her physician stating that Plaintiff had

3

suffered a work-related injury, which was attributed to prolonged work in an uncomfortable position at a work station. The letter suggested that Plaintiff use a work station that lowered to 30.5 inches off the ground, but it did not identify any disability that required Plaintiff to perform her work from a seated position. In April 2014, Inova provided Plaintiff with a new foot rest, custom-built to her specifications, which permitted her to work from a seated position, with her feet resting flat.

In the spring of 2014, Plaintiff started failing or refusing to perform certain duties included in her full time job description. For example, Plaintiff told Ms. Jefferys that she did not dispose formalin in the appropriate waste container because the container was difficult to empty. This was a violation of Inova's policies. Plaintiff was counseled on the proper disposing of formalin on three separate occasions—on February 24, March 4, and March 19, 2014. Furthermore, on May 28, 2014, Plaintiff was counseled on the proper disposal of tissue, since the way in which Plaintiff was disposing tissue violated Inova's policies. At no time during this period did Plaintiff attribute her declining performance to a disability.

On July 29, 2014, one of the pathologists in Plaintiff's laboratory audited Plaintiff's gross of a specimen and found that Plaintiff's gross description had been inaccurate, and that

4

the gross dissection had been improperly performed. As a result of this audit, Plaintiff's supervisor and Ms. Jefferys met with Plaintiff on August 5, 2015 and counseled her as to her declining work performance. In October and November 2014, Plaintiff received multiple other communications relating to additional errors she made while performing her work.

In late November 2014, Plaintiff began attributing her ongoing performance issues to her grossing station. Specifically, in response to an email regarding problems with Plaintiff's dictation of gross descriptions, Plaintiff stated that she experienced back spasms while sitting all day, even though she was using her custom-built foot rest. As a result of Plaintiff's new complaints about her works station, Plaintiff met with an HR representative on December 9, 2014 and received a Reasonable Accommodations Request Form for her physician to complete. On December 22, 2014, at the request of several Inova pathologists, HR prepared a Performance Improvement Plan for Plaintiff. The Plan contained specific areas for Plaintiff to improve, such as timely arrival and departure from work and providing proper gross descriptions of specimens.

On December 24, 2014, Plaintiff sought treatment for back pain in the Inova Emergency Room. On the same day, Plaintiff submitted her Request for Reasonable Accommodation Form to HR, in which she requested use of her old work station or a new work

station that lowered to 30.5 inches from the ground. At that time, Plaintiff did not include a statement from her physician identifying any disability for which this accommodation was needed. Shortly thereafter, Plaintiff applied for family medical leave, and Inova approved her request for continuous family medical leave and short-term disability through January 5, 2014, as well as her requests for intermittent family medical leave through July 2015.

On January 11, 2015, Plaintiff submitted to HR a form from her physician, which stated that Plaintiff needed stretch breaks, could not stand more than ten minutes at a time, and could not be required to work over seven hours per day if working six consecutive days. Inova accommodated these requests, and, although Plaintiff's physician had not identified an ADA-related disability, Inova ordered a custom-built grossing station that would lower to a height of 30.5 inches to the ground.

Notwithstanding the implementation of Plaintiff's requests, Plaintiff's work performance did not improve according to Inova's standards. In April 2015, Plaintiff received low scores on a performance review that tested several areas of competencies. Furthermore, in April and May 2015, Plaintiff committed three errors that were reported pursuant to Inova's safety policy. First, Plaintiff mixed up the sequencing of

cassettes between two patients. Second, Plaintiff mislabeled two cassettes and slides. Third, Plaintiff mixed up tissue in a two-part tissue case. Following the third reported incident, Plaintiff received a written warning, which advised Plaintiff that failure to meet Inova's expectations could result in further discipline, including termination.

On June 9, 2015, Inova installed the custom-built work station that had been ordered for Plaintiff. A month later, on July 8, 2015, Plaintiff completed an incorrect colon dissection. Dr. Ammann, one of the pathologists, performed a resection of one of Plaintiff's cases and found that Plaintiff had not detected a perforation on the specimen. Dr. Amman prepared an audit of Plaintiff's case, including photographs of the specimen as Plaintiff had dissected it and the specimen after it had been properly dissected. Plaintiff's inadequate gross of the colon risked losing clinical information and delayed patient care. As a result of this error, along with Plaintiff's history of poor performance since becoming a full-time employee, Dr. Amman, with the approval of HR, terminated Plaintiff's employment on July 10, 2015. Inova documented the reasons for Plaintiff's termination in a Progressive Discipline form.

On March 18, 2016, the Equal Employment Opportunity Commission issued Plaintiff a Notice of Right to Sue. Plaintiff filed this action on June 16, 2016. She amended her complaint

on September 13, 2016 and alleged discrimination in violation of the ADA in Count I, retaliation in violation of the ADA in Count II, and retaliation in violation of the FMLA in Count III. Following the conclusion of discovery, Defendant now moves for summary judgment on all counts of the Amended Complaint.

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the pleadings and evidence before the Court show no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden of showing that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Because Plaintiff has alleged no direct evidence of unlawful discrimination or retaliation, she must proceed under the burden-shifting approach of the *McDonnell Douglas* framework to prove that her termination violated the ADA or the FMLA. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc.; Waag v. Sotera Defense Sol., Inc., 857 F.3d 179, 191-92 (4th Cir. 2017).

8

Under *McDonnell Douglas*, a plaintiff must first state a prima facie case of discrimination or retaliation. McDonnell, 411 U.S. at 802. If the plaintiff succeeds in stating a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory and non-retaliatory reason for its adverse employment decision. Id. If the defendant satisfies this showing, the plaintiff must show that the articulated reason is a pretext for discrimination or retaliation. Id. at 804.

Plaintiff fails to establish that Inova unlawfully terminated her employment on the basis of a disability. To establish a case of wrongful termination under the ADA, Plaintiff must show by a preponderance of the evidence that: (1) she is within the ADA's protected class; (2) she was discharged; (3) at the time of her discharge, she was performing her job at a level that met her employer's legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of discrimination. See Ennis, 53 F.3d at 58; Smith v. Strayer Univ. Corp., 79 F. Supp. 3d 591, 603 (E.D. Va. 2015).

Even assuming that Plaintiff's back condition constitutes a disability under the ADA, Plaintiff cannot meet the third element of a prima facie case. Plaintiff has not presented evidence showing that she was meeting Inova's legitimate

9

expectations at the time she was terminated. Rather, the evidence shows that Plaintiff was repeatedly counseled and warned about her declining job performance. For example, Plaintiff was counseled on numerous occasions regarding the proper disposal of formalin and tissue and her inaccurate descriptions of specimens. Additionally, Inova provided Plaintiff with a Personal Improvement Plan after receiving complaints from pathologists with whom Plaintiff worked. The Plan contained specific areas where Plaintiff's job performance required improvement. Despite the implementation of this Plan, Plaintiff's performance did not improve—instead, Plaintiff received low scores on a performance review testing multiple different criteria. Plaintiff's low scores demonstrate that Plaintiff was not meeting Inova's expectations.

Furthermore, Plaintiff received a written warning in which Inova identified three separate errors that Plaintiff committed in violation of Inova's safety policy. Finally, Plaintiff completed an incorrect colon dissection that caused Dr. Ammann, one of Inova's pathologists, to conduct an audit and ultimately terminate Plaintiff's employment. In short, Plaintiff was not performing her job adequately, and, as a result, Plaintiff cannot show that Inova unlawfully terminated her employment on the basis of a disability. Thus, Plaintiff's discrimination in

violation of the ADA fails, and Inova is entitled to summary judgment as to Count I.

Plaintiff also fails to establish that Inova retaliated against her in violation of the ADA. To establish a prima facie case of retaliation, Plaintiff must show that: (1) she engaged in protected activity under the ADA; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the employment action. See Smith, 79 F. Supp. 3d at 605. Retaliation claims are subject to a higher "but for" causation standard, under which Plaintiff must show that the causal link between her protected activity and her removal is so close that the removal would not have occurred but for the protected activity. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013); Lacasses v. Didlake, Inc., 194 F. Supp. 3d 494, 503 (E.D. Va. 2016).

Plaintiff fails to prove retaliation under the ADA because she cannot establish that Inova's reasons for terminating her were pretextual.[1] Plaintiff claims that Defendant terminated her employment because she requested an accommodation. However, the evidence shows that Inova terminated Plaintiff because her job performance had been steadily declining over the eighteen months before she was terminated.

---

[1] The McDonnell Douglas framework demands proof at the pretext stage that retaliation was a but-for cause of a challenged adverse employment action. Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 252 (4th Cir. 2015).

11

Furthermore, Inova continuously accommodated Plaintiff's requests throughout her full time employment, for a period of about eighteen months. First, Inova built Plaintiff a foot rest to her exact measurements. About a year later, Inova approved Plaintiff's requests for stretch breaks, limited her standing, and curtailed the hours she worked. Finally, Inova ordered and installed a new work station that met Plaintiff's requested specifications. Inova did not terminate Plaintiff until eighteen months after Plaintiff began requesting accommodations. Defendant has presented legitimate, non-retaliatory reasons for terminating Plaintiff, and Plaintiff does not present evidence that these legitimate reasons were merely pretextual. As a result, because Plaintiff cannot show that her retaliation was the "but for" cause of her termination, Plaintiff's claim for retaliation under the ADA fails, and Defendant is entitled to summary judgment on Count II.

Finally, Plaintiff fails to establish that Inova retaliated against her in violation of the FMLA. As with the requirements under the ADA, to establish a prima facie case of retaliation under the FMLA, Plaintiff must show that: (1) she engaged in protected activity; (2) Inova took adverse action against her; and (3) the adverse action was causally connected to her protected activity. See Perry v. Comput. Sci. Corp., 429 F.

App'x 218, 221 (4th Cir. 2011) (quoting Yashenko v. Harra's N.C. Casino Co., LLC, 446 F.3d 541, 551 (4th Cir. 2006)).

Plaintiff fails to meet the third prong of a prima facie case of retaliations under the FMLA because she has not produced evidenced showing a causal connection between her FMLA leave and her termination. Plaintiff contends that the disciplinary actions that Inova took against her were based on her inability to complete enough work each day, which in turn resulted from Plaintiff's use of intermittent FMLA. However, Plaintiff has not alleged that Inova interfered with or denied her the use of any family leave. Rather, the record reflects that Plaintiff requested and received the family medical leave that she requested. Furthermore, Plaintiff was not terminated until six months after she requested and began receiving family medical leave. As a result, Plaintiff has not shown a causal connection between her FMLA leave and her termination.

Moreover, as discussed above, Inova had legitimate, non-discriminatory and non-retaliatory reasons for terminating Plaintiff's employment. Inova terminated Plaintiff after a series of incidents regarding Plaintiff's work. These incidents were documented in negative performance evaluations, audits, counseling sessions, a Performance Improvement Plan, and a written warning. Furthermore, these events risked the loss of clinical information and delayed care to patients, which gave

Inova legitimate grounds upon which to terminate Plaintiff's employment. As a result, Plaintiff's claim for retaliation under the FMLA fails, and Defendant is entitled to summary judgment on Count III.

For the aforementioned reasons, this Court finds that summary judgment should be granted in favor of the Defendant, and this case should be dismissed. An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
June 26, 2017